UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 10-23382-CIV-MORENO/O'SULLIVAN

OLIVIA GRAVES, on behalf of herself
and the UNITED STATES OF AMERICA,

    Plaintiff/Relator,

v.

PLAZA MEDICAL CENTERS, CORP.,
HUMANA, INC., and MICHAEL CAVANAUGH,

    Defendants.
                                                  /

## **ORDER**

THIS MATTER is before the Court on the Defendants Plaza Medical Centers, Corp. and Dr. Michael Cavanaugh's Motion in Limine to Limit Evidence of Allegedly Unsupported Diagnoses and Evidence of Damages to Those Specific Diagnosis/Code Submissions Identified by Relator in the Body of Her Complaint and Exhibit 29 and Incorporated Memorandum of Law (DE# 707, 12/28/16), which the undersigned allowed Defendant Humana, Inc. (DE# 723, 12/28/16) to join. See Order (DE# 848; 7/28/17). Having reviewed the defendants' motion, the relator's response, the defendants' reply, as well as the supplemental filings that the Court requested at the August 25, 2017 hearing and the applicable law, it is

ORDERED AND ADJUDGED that the Defendants Plaza Medical Centers, Corp. and Dr. Michael Cavanaugh's Motion in Limine to Limit Evidence of Allegedly Unsupported Diagnoses and Evidence of Damages to Those Specific Diagnosis/Code Submissions Identified by Relator in the Body of Her Complaint and Exhibit 29 and

Incorporated Memorandum of Law (DE# 707, 12/28/16), which was adopted by Defendant Humana, Inc., is DENIED.

In their motion, the defendants seek to exclude any evidence of patients, diagnoses or codes other than those specifically identified by diagnosis/code and date by Relator in her Third Amended Complaint and Exhibit 29. (DE# 707, 12/28/16) The defendants argue that allowing the relator to introduce evidence at trial of 8,000+ additional claims regarding the 1,200+ particular patient/diagnosis code submissions identified and specifically challenged by date in the relator's Third Amended Complaint and Exhibit 29 thereto is prejudicial and impossible. See Defendants Plaza Medical Centers Corp.'s and Dr. Michael Cavanaugh's Supplemental Memorandum in Support of Defendants' Motion in Limine to Limit Evidence of Allegedly Unsupported Diagnoses and Evidence of Damages to Those Specific Diagnosis/Code Submissions Identified by Relator in the Body of Her Complaint and Exhibit 29 [D.E. 707] at 6 (DE# 879, 9/6/17). The defendants contend that "[i]t would take two years more for Defendants to be able to prepare to defend against 8000+ additional claims and they could only start the process after Relator provides opinions as to [the] basis for a falsity claim for the additional diagnoses/code submissions she intends to challenge." Id.

Additionally, the defendants argue that the relator's request to introduce evidence of challenged diagnoses other than those specifically identified by patient, diagnoses, code and date of submission in her Third Amended Complaint and Exhibit 29 is contrary to relevant law and violates the Court's rulings and orders in this case. The undersigned disagrees. In the Third Amended Complaint, which is the operative complaint, the relator stated, "discovery has yielded the disclosure of over 600

Medicare Part C patient files ... Relator identified hundreds of additional patients with diagnoses not supported by the medical records. These patients and unsupported diagnoses are identified in the appendix attached hereto and incorporated as Exhibit 29." Third Amended Complaint at ¶42 (DE# 277, 9/22/15). The Third Amended Complaint alleges that "... Medicare would have started to pay the higher capitation amounts after the diagnoses were first made ... and they would continue until those diagnoses are removed. All of the claims submitted to [the Centers for Medicare and Medicaid Services] after that date were thus fraudulent." Id. at 39(b). The relator alleged increased risk adjustment factors of various patients over the course of several years stemming from the initial fraudulent diagnoses. See, id. at ¶¶46-75.

During the August 25, 2017 hearing, the parties argued about the distinction between diagnoses and diagnosis codes. The relator contends that her expert, Dr. Weine, testified regarding false diagnoses and that Dr. Weine's initial expert report and supplemental expert report "makes [sic] it apparent that that first date of service is the date of [sic] the diagnosis was first made incorrectly and all subsequent ones are incorrect, except for those few patients. Those exceptions that are noted within [Dr. Weine's] report." (Sealed)(DE# 873-1 at 134, 9/1/17).

Additionally, in the Order on Defendant Humana, Inc.'s Motion for Discovery Hearing to Compel Relator to Answer Interrogatories No. 62 and No. 63 (DE# 620, 10/25/16), the undersigned ruled that

> Plaintiff is deemed to have answered Interrogatory No. 62 as follows: Every False Clinical Diagnosis, and corresponding Patient and first Date of Service for which the diagnosis was unsupported, that Plaintiff has identified for Humana Medicare Advantage Plan Patients are listed in the HUM-GRA-EX-0000063 spreadsheet (a compilation prepared by Humana

3

> of every alleged unsupported diagnoses listed in the Expert Report of
> Gary R. Weine, M.D., F.A.C.P. dated August 22, 2016), and in the PLA-
> WEINE-00001 spreadsheet (alleged unsupported diagnoses listed in the
> Supplement Expert Report of Gary R. Weine, M.D. F.A.C.P., dated
> September 26, 2016).  Plaintiff has not identified any other False Clinical
> Diagnosis responsive to Interrogatory No. 62 apart from the False Clinical
> Diagnosis listed by Patient, Diagnosis Code and Date of Service in the
> above-referenced spreadsheets.

Order (DE# 620, 10/25/16).  In her initial opposition (DE# 754, 1/11/17), the relator conceded that relator "has no issue with limiting evidence at trial to the specific diagnoses and diagnosis codes identified by patient beginning on the date of service listed in the initial and supplemental expert reports of Dr. Weine, in keeping with the [C]ourt's order at D.E. 620." Opposition at 2 (DE# 754, 1/11/17).  The relator explained that "[t]he 1,229 risk-adjusting diagnoses referred [to in] the Plaza Defendants motion do not equate to only 1,229 risk adjusting diagnosis code submissions."  Id.  The undersigned agrees.  The relator further explained that

> the Plaza Defendants assigned diagnoses (e.g. COPD) to their patients in
> the patients' progress note and then submitted corresponding diagnosis
> codes (e.g. ICD-9 code 496 for COPD) to Humana for patient encounters
> on multiple dates of service and in some cases, over multiple years.  For
> this simple reason, the number of false **diagnosis code submissions** for
> which Relator will put on evidence at trial is greater than the number of
> false **diagnoses**.  "Each diagnosis may be coded multiple times and must
> be submitted at least annually to affect capitation amounts ... Relator has
> challenged over 9,200 risk-adjusting diagnosis codes of an actual 74,619
> risk-adjusting codes Plaza submitted to Humana during 2006-2011
> timeframe."

Id. (quoting excerpt from the relator's opposition to the Plaza defendants' motions for summary judgment) (DE# 646 n.4)(emphasis in original)).  In her Supplemental Briefing on Defendants Plaza Medical Centers, Corp.'s and Dr. Michael Cavanaugh's Motion to Limit Evidence, the relator stated that "trial in this case will focus on a discrete universe

of 360 patients diagnosed with 1,229 conditions they did not have." (DE# 878, 9/6/17). The undersigned finds that the relator's disclosure of 360 patients with 1,229 conditions identified as unsupported as of the date indicated in the Third Amended Complaint as well as the spreadsheet identified in Dr. Weine's supplemental expert report that was referenced and incorporated in the relator's answers to Humana, Inc.'s Interrogatories Nos. 62 and 63, provided adequate notice to the defendants that the false diagnoses continued for each patient beyond the initial date of diagnosis. See Order at 4 n.1 (DE# 276, 9/22/17). In granting leave to file the Third Amended Complaint, the undersigned explained that "[t]he amended spreadsheet includes the patient name and the unsupported diagnoses as well as the date **each was originally diagnosed** and the Bates stamp page number where the document can be found. The amended spreadsheet contains 1,226 unsupported diagnoses identified in 361 patients." Id. (Emphasis added); see Amended Spreadsheet (DE# 268, Ex. 1; 9/4/2015). The relator maintains and the undersigned agrees that the relator informed the defendants of the scope of the false claims at issue in this case since August 2015. The defendants' argument that some of the identified patients may have subsequently developed the initial unsupported condition due to a general deterioration of health as a patient ages does not negate the relator's allegation that the diagnoses were unsupported initially and subsequently for a period of time. The undersigned finds that the defendants may dispute the relator's claim of falsity and/or prove that any of the diagnoses at issue became accurate at any point throughout the relevant period.

The defendants argue that the relator failed to sufficiently allege the extra 8,000+ claims and wholly failed to produce any evidence of falsity in her sworn testimony and

her expert's sworn report and cannot present these diagnosis/code submissions at trial due to discovery violations and the complete absence of evidence of falsity. The defendants argue further that "'[t]rial by surprise is no longer part of our jurisprudence.'" (DE# 879, 9/6/17) (quoting Benedetti v. Soo Line RR Co., 2004 WL 2222281 (N.D. Ill. 2004) (quoting Salgado by Salgado v. General Motors Corp., 150 F.3d 735, 742 n.6 (7th Cir. 1998)). The defendants' reliance on Benedetti and Salgado is misplaced as both cases address the district court's proper exclusion of expert reports due to discovery violations. Additionally, neither case is binding on this Court. The undersigned finds that the relator satisfied the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure and the defendants were on notice of the universe of claims at issue for more than two years.

Accordingly, the Defendants Plaza Medical Centers, Corp. and Dr. Michael Cavanaugh's Motion in Limine to Limit Evidence of Allegedly Unsupported Diagnoses and Evidence of Damages to Those Specific Diagnosis/Code Submissions Identified by Relator in the Body of Her Complaint and Exhibit 29 and Incorporated Memorandum of Law (DE# 707, 12/28/16), which was adopted by Defendant Humana, Inc., is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida this **25th** day of September, 2017.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies to:
United States District Court Judge Moreno
All counsel of record